UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 3:17-CR-00055-1 (VLB) |
| IVAN ROSARIO, | April 4, 2018 |
|     Defendant. | |

### MEMORANDUM OF DECISION ON PRETRIAL MOTIONS

Mr. Rosario is charged with three Counts related to this action: (1) conspiracy to distribute and to possess with intent to distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i); (2) unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 924(c)(2).[1] This decision addresses several pretrial motions for which the Court has already issued the following oral rulings: (1) Mr. Rosario's Motion to Impose a Sentence Without Regard to the Mandatory Minimum Sentence and to Charge the Jury on the Mandatory Minimum Sentence is DENIED; (2) Mr. Rosario's Motion to Sever or Bifurcate the Counts is GRANTED in part and DENIED in part; and (3) Mr. Rosario's Motion to Preclude

---

[1] **He has also been charged with two counts in *United States v. Rosario*, case no. 18-cr-00007: (1) witness tampering with intent to influence or prevent testimony and to cause or induce any person to withhold testimony, in violation of 18 U.S.C. § 1512(b)(1), (b)(2)(A), (j); and (2) causing or inducing any person to destroy evidence, in violation of 18 U.S.C. § 1512(b)(2)(B) and (j). This case has been consolidated with *United States v. Rosario*, 17-cr-00055-1 (VLB).**

1

Video Recordings Disclosed on January 26, 2018 is DENIED.  The Court now issues a written decision articulating more fully its reasons for these rulings.

I. **Motion to Impose a Sentence Without Regard to the Mandatory Minimum Sentence and to Charge the Jury on the Mandatory Minimum Sentence**

Defendant Rosario has asked the Court (1) to instruct the jury that the Defendant must impose the mandatory prison sentence; and/or (2) to sentence the Defendant without regard to the applicable mandatory minimum.  The Court addresses each argument separately.

A. *Instructing the Jury*

Mr. Rosario argues that notwithstanding the "present state of the law," which "considers information regarding sentencing irrelevant to the jury's factfinding responsibility," the Court has and should exercise its authority to instruct the jury on the applicable mandatory minimum.  [Dkt. 156 (MIL on Mandatory Min. re Jury Charge) at 2].  The Government responds "there is nothing about the prosecution of this matter that might plausibly justify" departure from the typical manner in which a jury is instructed to consider the evidence.  [Dkt. 165 (MIL on Mandatory Min. Response) at 6 of PDF].

A jury's role at trial is clearly defined: "to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." *United States v. Shannon*, 512 U.S. 573, 579 (1994).  "The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury." *Id.*  Indeed, enabling jurors to consider information related to sentencing "invites them to ponder matters that

2

are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.*

A defendant does not have a Sixth Amendment right to a jury instruction on the defendant's mandatory minimum sentence. *See United States v. Polouizzi*, 564 F.3d 142, 160 (2d Cir. 2009) (determining district court erred when it concluded a defendant had such a Sixth Amendment right). However, a court may exercise its discretion to charge the jury on the mandatory minimum sentence when there exist circumstances warranting such a need. *See id.* at 159 ("Far from prohibiting all instructions to the jury regarding the consequences of its verdict, these statements make clear that in some, albeit limited, circumstances it may be appropriate to instruct the jury regarding those consequences."); *see also United States v. Pabon-Cruz*, 391 F.3d 86, 95 (2d Cir. 2005) (affirming conviction on the basis that the facts of the case did not require a jury instruction on his mandatory minimum sentence); *Shannon*, 512 U.S. at 587 (recognizing "that an instruction of some form may be necessary under certain limited circumstances"). An example is when a jury has been misled by counsel or a witness. *See id.* at 587-88.

At this time, there does not exist a reason to instruct the jury on Mr. Rosario's mandatory minimum sentences. To do so would certainly increase the risk that jurors would "ponder matters that are not within their province." *Shannon*, 512 U.S. at 579. After failing to articulate a unique circumstance warranting a jury charge on a mandatory minimum sentence and after the Court's oral ruling declining to give such a charge, defense counsel has asked

3

cooperating co-defendant witnesses questions suggesting that they are exposed to draconian sentences. The defense cannot create a unique circumstance in order to compel the Court to charge the jury on the issue of sentencing otherwise not called for.

While Mr. Rosario believes an instruction on the mandatory minimums would "impress upon the jury the gravity of its duty," the Court does not believe knowledge of such gravity outweighs the risk of harm resulting from a juror's clouded judgment. A juror might hear a mandatory minimum instruction and out of compassion lean against convicting the defendant on account of the sentence length. But it is equally possible the jury instruction could motivate the juror to convict out of the juror's belief in rehabilitation, punishment, or any number of other principles related to the purpose of the criminal justice system. Either situation presents a problem, as the juror might make a determination from the heart rather than from the mind. As the United States Supreme Court so aptly put it, "[w]hether the instruction works to the advantage or disadvantage of the defendant is, of course, somewhat beside the point." *Shannon*, 512 U.S. at 586. Here, there is no reason to bring advantages and disadvantages into the fold. The Court will stay true to the foundational principle that the jury is responsible for sifting through facts and determining Mr. Rosario's guilt.

To the extent Mr. Rosario argues that failing to instruct the jury on the applicable mandatory minimums would be misleading, he cites no cases in which such an instruction has been found misleading and no cases in which a court's instruction on mandatory minimums has been upheld. This Court can see no

basis for the jury to be misled if it hears nothing about sentencing other than the fact that it is within the province of the Court and they should not concern themselves with it. There is a presumption that juries follow the instructions given to them by the judge. Thus, having been told to disregard sentencing, Defendant has not identified any reason why the jury could become confused or be misled.

Even if such an instruction is misleading, because the Court is prohibited from encouraging nullification, and an instruction on mandatory minimums might encourage nullification, it would seem a safer course to alter or remove the potentially misleading statement rather than to include a colloquy on mandatory minimums. *See Polouizzi*, 564 F.3d at 161–62 (citing *United States v. Thomas*, 116 F.3d 606, 616 (2d Cir. 1997)). For these reasons and the reasons stated at the hearing, this motion is DENIED.

B. *Sentencing Below the Mandatory Minimum*

Defendant also argues that mandatory minimum sentences are unconstitutional because they violate the separation of powers doctrine, and he relies largely on law review articles and cases in which judge have imposed mandatory minimums while complaining about their obligation to do so. The Government rests largely on its arguments related to the jury charge issue, but it also argues that this issue is not ripe for adjudication because Rosario has not yet been convicted and any motions relating to an appropriate sentence are premature.

Mr. Rosario rightly points out that "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." *Chapman v. United States*, 500 U.S. 453, 467 (1991). This includes the authority to establish mandatory minimum sentences. *United States v. Huerta*, 878 F.2d 89, 93 (2d Cir. 1989) ("In fact, as appellant concedes, Congress can constitutionally eliminate all discretion in sentencing judges by establishing mandatory sentences and thus has the power to preclude sentencing judges from giving any consideration to a defendant's cooperation.") (internal citations omitted); *United States v. Hildenbrandt*, 378 F. Supp. 2d 44, 46 (N.D.N.Y. 2005) ("[Congress's] power includes the authority to create mandatory minimum sentences for crimes without running afoul of the separation of powers doctrine."). Mr. Rosario has not identified any legal authority that supports the Court sentencing Mr. Rosario below the statutory mandatory minimum. As the Court expressed during the hearing, it will not depart from the statutory requirements when there is no persuasive legal authority enabling the Court to do so. This motion is therefore DENIED.

The Court also notes that Mr. Rosario's two motions, when considered together, create a problematic situation for the Court. Were the Court to grant both motions relating to his mandatory minimum sentence, the Court would in practice instruct the jury on its obligation to give Mr. Rosario a mandatory minimum sentence, but then later on down the road at the actual time of sentencing it would depart from the statutory requirement. This is by definition misleading the jury and will not be permitted.

## II.    Motion to Sever or Bifurcate the Counts

Mr. Rosario moves pursuant to Fed. R. Crim. P. 14(a) to sever or bifurcate Count One from Counts Two and Three, because he claimed that knowledge of Rosario's status as a convicted felon and his possession of a firearm will substantially prejudice the jury.  The Government counters that joinder is proper because there is a sufficient logical connection between the offenses, the same evidence may be used to prove each count, and any prejudice resulting from knowledge of the prior conviction can be mitigated through the use of a "sanitized stipulation" and a limiting jury instruction.

Rule 8 of the Federal Rules of Criminal Procedure allows an indictment to charge a defendant "in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  Joinder is appropriate when there is a "sufficient logical connection" between the counts, *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990), or when "the same evidence may be used to prove each count," *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991).

That being said, Rule 14(a) of the Federal Rules of Civil Procedure gives the court authority to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" when joinder "appears to prejudice a defendant. . . ."  Fed. R. Civ. P. 14(a); *see United States v. Werner*, 620 F.2d 922,

7

928 (2d Cir 1980) ("Even though distinct offenses have been properly joined under Rule 8, the court may order separate trials or grant a severance under Rule 14 if it appears that the defendant is prejudiced by the joinder."). Severance on these grounds requires the defendant to demonstrate "not simply some prejudice but *substantial* prejudice." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (citing *Werner*, 620 F.2d at 928) (emphasis in original).

Ultimately, Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States,* 506 U.S. 534, 539 (1993); *see also United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) ("A motion for severance . . . is addressed to the discretion of the trial court and the sound exercise of that discretion is virtually unreviewable."). Together, Rule 8(b) and Rule 14 "are designed to promote economy and efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Zafiro*, 506 U.S. at 540 (1993) (quotations omitted). A judge can therefore can give limiting instructions or use other "less drastic measures [than severance]" in order "to cure any risk of prejudice and permit joinder." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011).

For a felon-in-possession charge in particular, the Second Circuit has held that a district court may exercise its discretion to deny severance where "there is a logical connection between the felon-in-possession count and the other charges, there is a similarity in the evidence necessary to prove the different charges, the trial court takes steps to limit the danger of prejudice and gives a

proper limiting instruction, and the defendant is not substantially or unfairly prejudiced." *Id.* at 132. Notably, the Second Circuit made clear its broader position as related the risk of prejudice:

> Nothing in this opinion should be taken to be a denunciation of the practice of bifurcating a felon-in-possession charge from other charges in a single multi-charge trial where doing so would better protect the defendant from prejudice than a limiting instruction, and the district court determines that a limiting instruction cannot adequately protect the defendant from substantial prejudice and bifurcating the trial of that charge would provide such protection.

*Id.*

As a general matter, Mr. Rosario has not presented any legally persuasive argument demonstrating "substantial prejudice." He cites *United States v. Pugh*, No. 3:02CR69(CFD), 2003 WL 22132915 (D. Conn. Aug. 26, 2003), a case in which Judge Droney severed the defendant's felon-in-possession count from his other two counts of (a) possession with intent to distribute, and (b) possession of a firearm during and relating to a drug trafficking crime. Judge Droney's written decision did not relate to severance, however; the reference to severance was merely one sentence in the first paragraph and the decision addressed different motions *in limine*. *Id.* at *1 ("On August 19, 2003, the Court granted the defendant's motion to sever count two and try that count in a separate trial."). Therefore, this decision does not provide any basis for the Court to evaluate whether the facts of the case are similar to the extent they warrant similar rulings. The Court finds that Mr. Rosario has not met his burden to show that severance is warranted in this instance.

9

In considering the principles set forth in *Page*, the Court also finds there is a logical connection between the narcotics possession count and the possession of a firearm *in furtherance of a drug trafficking crime*. The Government contends that the firearm at issue was found within a car that also had specialized compartments designed to hold contraband, and thus that their theory of the case requires them to rely on the fact that both guns and such specialized vehicles are tools of the drug trade. *See* [Dkt. 166 (MIL on Bifurcation Response) at 4-5]. They argue that evidence about these circumstances and Mr. Rosario's role in the drug trade are necessary to show that Mr. Rosario knowingly possessed the gun at issue. Defense counsel outlined the *practical* reasons for severing the firearm possession charge from the drug possession charge (i.e. so that the jury could consider the firearm possession counts together), but conceded there is no legal reason for severing these charges; he agreed evidence would overlap. [Hr'g 2/9/18 at 10:26-29 AM]. The Court finds the logical connection between these counts and the overlapping evidence militate against severance so long as the danger of prejudice is appropriately limited.

With this in mind, the Court now addresses the danger for prejudice. Defense counsel made clear presenting evidence of the prior felony conviction was highly prejudicial and that bifurcation of this aspect of Count Two, at the very least, was essential to avoid undue prejudice. [Hr'g 2/9/18 at 10:22-29 AM]. The Government conceded that bifurcating the trial on this ground alone would not be prejudicial to its case but that the prevailing norm, a limiting instruction, was sufficient. [Hr'g 2/9/18 at 10:34-36 AM]. To minimize the risk of prejudice against

10

Mr. Rosario, the Court will adopt the Second Circuit's sound advice on the merits of bifurcation delivered in *Page*. Courts have long recognized a jury's knowledge of the prior felony conviction may cloud the ability to fairly and impartially weigh evidence presented at trial on the other counts, and that limiting instructions may not be sufficient under certain circumstances. *See, e.g., United States v. Jones*, 16 F.3d 487, (2d Cir. 1994) (vacating the defendant's felon-in-possession conviction and holding the defendant "suffered prejudice from the admission of his criminal record" because "[t]here is an overwhelming probability that the jurors did not adhere to the court's instructions"); *United States v. Daniels*, 770 F.2d 1111 (D. C. Cir. 1985) ("To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities."). Therefore, the Court GRANTS IN PART this motion. Count Two is bifurcated and the Government will have an opportunity to present evidence after the jury renders its determination on Counts One and Three.

### III.   Motion to Preclude Video Recordings Disclosed on January 26, 2018

The day before jury selection on March 5, 2018, Mr. Rosario moved to preclude video recordings the Government disclosed to him on January 26, 2018. The Government objected, and the Court found in favor of the Government.

The facts are largely undisputed. In February 2017,[2] the Government seized Mr. Rosario's surveillance equipment. [Dkt. 223 (Mot. Preclude) at 4; Dkt. 226 at 1]. At the time of seizure, Mr. Rosario "believed that the recordings were

---

[2] The Government indicates that it lawfully seized the surveillance system in February 2017. [Dkt. 226 (Mot. Preclude Response) at 1].

not permanently preserved." [Dkt. 223 at 4]. Mr. Rosario acknowledges that although the Government had the surveillance system in its possession, it "did not actually have the recordings until a day or two before disclosure, which may be in part due to the FBI's ability to retrieve previously deleted video." *Id.* The Government clarified that it "received the recovered recordings on January 25, 2018, and produced that material to the defense within 24-hours." [Dkt. 226 at 1].

When producing the discovery, the Government clearly identified "<u>Seized home-surveillance system excerpts (Bates labeled USAO-002998 through USAO-003038)</u>" and listed six videos from March 28, 2016; 16 videos from April 12, 2016; and 19 videos from April 15, 2016. [Dkt. 223-1 (Def. Ex., Letter) (emphasis in original)]. The Government cited an excerpt from the accompanying FBI report, which expressly stated the recordings showed transfers of cash and unknown items into a car. [Dkt. 226 at 2]. Thereafter on February 6, 2018, the Government "drew [defense counsel's] attention to some of the recently disclosed evidence that included the videos at issue, but the substance was not appreciated" as defense counsel believed the videos pertained to a different surveillance period. [Dkt. 223 at 3]. These videos were not reviewed for several weeks after which the Government received confirmation from defense counsel on March 4, 2018, that the videos had been reviewed. *Id.* at 2.

Mr. Rosario does not provide any legal authority to back up his arguments, but the sum and substance is that the Government failed to disclose the discovery, which it had in its possession since February 2017, in violation of the Court's Standing Order on Discovery and the due process and equal protection

12

clauses of the Fifth and/or Fourteenth Amendments. *See* [Dkt. 223]. The Government challenges the notion that this evidence should be precluded on the basis of "surprise" because Mr. Rosario recorded the videos, he believed they were destroyed, and his counsel had the videos for seven weeks prior to reviewing and challenging their admissibility.

Rule 16 of the Federal Rules of Criminal Procedure outlines the discovery process for federal criminal cases. Under Rule 16(a)(1)(B), the Government must disclose a defendant's relevant recorded statement if it is in the Government's "possession, custody, or control" and the Government's counsel knows the statement exists. In addition, upon the defendant's request the Government must "permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items" if the Government possesses, controls, or has custody over the item and "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E).

The District of Connecticut's Standing Order on Discovery generally implements Fed. R. Crim. P. 16 but also adds additional provisions and protections. *See* D. Conn. Crim. L. R. (Criminal Appendix). Namely, the Standing Order on Discovery requires in relevant part the Government to *furnish copies* where practicable to defense counsel, "the following items within the government's possession, custody, or control, the existence of which is known or by the exercise of due diligence could be known to the attorney for the

government": "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, which are material to preparing the defense or which the government intends to use in its case-in-chief at trial, or were obtained from or belong to the defendant." D. Conn. Crim. L. R. App'x ¶ (A)(1)(f). The Standing Order on Discovery also imposes on both parties a "continuing duty . . . to reveal immediately to opposing counsel all <u>newly-discovered material</u> within the scope of this Standing Order." D. Conn. Crim. L. R. App'x ¶ (C).

The Government furnished copies of the video recordings pursuant to Rule 16 and the Standing Order on Discovery. *See* [Dkt. 223-1]. Mr. Rosario takes the position that the above sections of the Standing Order on Discovery were violated because the video recordings were not "newly-discovered material." [Dkt. 223 at 5]. It is true, as Mr. Rosario contends, "the Government had possession of the video recording equipment since its seizure." [Dkt. 223 at 4]. But possession of the equipment does not mean the Government had access to the contents of certain recordings that were believed by Mr. Rosario's own admission to have not been "permanently preserved." [Dkt. 223]. Indeed, it is undisputed the Government turned over the recovered video recordings one or two days after it received them from the FBI. [Dkt. 223 at 4; Dkt. 226 at 1]. And whether the Government "had the ability to develop and disclose its contents" is purely speculation on the part of Mr. Rosario; speculation cannot overcome the fact the Government promptly disclosed the recordings as contemplated by the Standing Order on Discovery.

**The Court concludes that, by virtue of the fact that Mr. Rosario was aware the Government had the recording device from his residence and was aware according to the Government's response that the Government was attempting to obtain recordings from that device, he had the ability to disclose that information to his attorney and to disclose the content of that device to his attorney from the onset of the charges here.  In view of the fact that it was his security system and he was aware that the Government had it and was trying to obtain information from it, he cannot stand before the Court credibly arguing surprise, except perhaps for the surprise the Government was successful in resurrecting information that had been deleted.  Mr. Rosario has not provided the Court with any legal authority to show how he has been prejudiced or his Fifth and Fourteenth Amendment rights have been violated in light of his possession of the video recordings for 38 days prior to jury selection.  The motion filed by Mr. Rosario is denied and the evidence will be admitted for all purposes to which it is relevant.  [Voir Dire 3/6/18 at 10:24-27 AM].**

    IT IS SO ORDERED

    _____/s/_____

    Hon. Vanessa L. Bryant
    United States District Judge

**Dated at Hartford, Connecticut: April 4, 2018**